## Jackson's Estate

*John Kennedy Ewing, 3d,* and *Raymond M. Remick,* of *Saul, Ewing, Remick & Saul,* for exceptants.

*Joseph Marinelli* and *Richard K. Stevens,* contra.

VAN DUSEN, P. J., November 25, 1938.—If this matter is to be disposed of solely upon the face of the will, it is clear to us that the two funds over which testatrix had power of appointment are not available to pay money legacies, and that the appointed estates must go in the same way as that in which she gave her residuary estate. Her language is "All the rest . . . of my estate . . . of which I may die seized or possessed . . . or over which I may have power of disposition by will, hereby expressly exercising any such power in me vested". Nothing could be plainer. See Valentine's Estate, 297 Pa. 99.

The auditing judge received evidence tending to show that the property which testatrix owned in her own right at the time she made her will was insufficient to pay the money legacies, from which it is argued that she must have intended that these legacies should be paid out of the appointed estates. He cited Hermann's Estate, 220 Pa. 52, McGarrigle's Estate, 21 Dist. R. 441, and South's Estate, 248 Pa. 165. The writer still has the doubt which he expressed in the court below in Valentine's Estate, 11 D. & C. 434, at page 436, as to the propriety of allowing such a fact to determine the construction of the will. Much might be said about those decisions, particularly in view of the history of the decision in Vanuxem's Estate, 212 Pa. 315, in which it was held that the insufficiency of personal estate at the time of the death of testator to pay money legacies was sufficient to work a conversion of real estate into personal estate in order to pay them. That decision and the theory on which it was founded have been discredited: Chamberlain's Estate, 257 Pa. 113; Reel's Estate, 272 Pa. 135; Bollinger's Estate, 26 D. & C. 689.

It will not be necessary to go into that question now, for the majority are of the opinion that the implication from such a fact should not overcome the express language of the will. The auditing judge was, therefore, correct in refusing to award these legacies out of the appointed estates.

The auditing judge made no affirmative finding as to whether the individual estate of testatrix at the time she made the will was or was not sufficient to pay the money legacies. Certainly at the time of her death it was not sufficient for this purpose; but while the best available sources of information with regard to her estate at the time of the making of the will were exhausted, the evidence did not exclude the possibility that the testatrix had other property than that which was thus disclosed.

Testatrix had power to appoint two funds, and if it is finally determined that these funds are available for

legacies, it will be necessary to determine how these funds should be applied. Because of the rule against remoteness, the appointments of testatrix may be valid as to one and invalid in part as to another. It is not necessary for us to determine the question, but in case our conclusion on the principal question should be reversed we express the opinion that the legacies (including the benefits of the tax free clause) should be apportioned between testatrix's own estate, and the two trust funds upon the basis of the net values of the three funds. We see no reason why testatrix's own estate should be appropriated first, or why a choice should be made between the two appointed funds.

The exceptions are dismissed and the adjudication is confirmed absolutely.

Klein and Bolger, JJ., dissent.

BOLGER, J., dissenting, November 30, 1938.—The adjudication and the majority opinion are predicated upon the decision in Valentine's Estate, 297 Pa. 99. That decision involves purely a tax question. Our question relates to donee's pecuniary legacies on the status of which our courts have rendered no binding decision. Exceptants, the pecuniary legatees, complain that by reason of applicable contrary presumptions, our case is not governed by the cited case nor by any of its precedents. Pointing out that Valentine's Estate was decided solely on the ground that: "The burden is on the Commonwealth clearly to prove its right to the tax and if there [is a] doubt it should be removed [against the State]", they urge, in opposition, the preference accorded pecuniary legatees over residuary legatees, who are "presumably the lowest in the scale of the testator's intended bounty": Flickwir's Estate, 136 Pa. 374; also that where one construction of certain language in a will would disinherit a sister, the Supreme Court said:

"Obviously, some construction should be sought for which will not work such seeming injustice, and which

will effectuate what, looking at all the surroundings, we have every reason to believe was the testator's main intent. . . . It is hardly possible that, as to Catharine, his purpose was to give with one hand and take away with the other": Jackson's Estate, 179 Pa. 77. See also Hermann's Estate, 220 Pa. 52.

In South's Estate, 248 Pa. 165, 168, our highest court said:

"The fact that there is nothing with which to pay the pecuniary legacies in the will . . . unless the fund, which is the subject of the power, is drawn upon, justifies a strong presumption that he intended to exercise his power of appointment. As he had nothing except this fund to bestow, the will would be fruitless, unless it be regarded as an execution of the power." See also in this connection, McGarrigle's Estate, 21 Dist. R. 441.

The treatment of the doctrine of blending is, to say the least, in a state of confusion. Every case appears to involve grave doubt. Courts and lawyers alike experience equal difficulty in resolving the various problems arising under it. Two aspects of it, however, appear quite clear in the decisions, namely: (1) That the intention of the donee is paramount; (2) that in order to find a blending it must appear that that intention reflects a purpose to commingle the appointive estate with that of the donee's immediate estate for all purposes. Hagen's Estate, 285 Pa. 326, is but one of the many authorities on these points.

The majority opinion holds that testatrix has exercised the power in the residuary clause of her will, but that there is no intention to blend for all purposes, hence the pecuniary legatees are excluded from participating in the appointive estate. In my opinion the point in the case is thus utterly ignored.

The solution of our question does not in any sense involve the question of blending. Testatrix's intention whether legatees should or should not take their legacies from the appointive estates, irrespective of the question of blending, is our question. She was " 'not apt to draw a

nice distinction' between property which [she had] . . . in fee simple and that over which [she possessed] . . . the control and testamentary right of disposition", as Judge Ashman said in Aubert's Appeal, 109 Pa. 447, cited with approval in Thompson v. Wanamaker's Trustee et al., 268 Pa. 203. We should construe these situations furthermore "on the assumption . . . that an ordinary man considers property, which he may dispose of by will, as his own." In other words, we should be most solicitous to prevent the circumvention of the testatrix's wishes by too closely adhering to and applying an artificial doctrine, which as stated in Valentine's Estate, supra, " 'is not to be stretched.' "

Likewise, it is to be observed that the legislature of our State has been alive to the possibility of injustice to legatees and other beneficiaries of testamentary powers of appointment and has come to their relief by providing in the Wills Act of June 7, 1917, P. L. 403, sec. 11 (a re-enactment of the Act of June 4, 1879, P. L. 88, sec. 3) that a general devise or bequest shall be construed to include any estate which testator may have power to appoint in any manner he may think proper, and shall operate as an execution of such power, unless a contrary intention shall appear by the will. This act has been most liberally construed by our courts in South's Estate, supra.

The artificial rule of blending in inheritance tax cases has been repealed by the Act of May 16, 1929, P. L. 1795, which provides:

"That property transferred pursuant to powers of appointment shall, in all cases where the power is hereafter exercised, be taxed as of the estate of the donor, notwithstanding any blending of such property with the property of the donee."

It must also be borne in mind that a portion of the property over which decedent exercised the power of appointment was her own property, set up by her in a deed of trust. In this respect the present case also differs from Valentine's Estate, supra, because in that case the prop-

erty in the trust estate belonged to decedent's husband. Ordinarily a person treats the property which he may dispose of by will as his own, and since a portion of this estate was originally decedent's own property, it is evident that she considered it as her own.

Therefore, in providing the pecuniary legacies in her will, she did not "with one hand bestow them and with the other take them away", but on the contrary considered that the gifts would be satisfied out of the appointive estates, her own estate at that time not being sufficient to satisfy these gifts. They should be so awarded if at all possible.

In McCord's Estate, 276 Pa. 459, the origin of this troublesome doctrine, as well as in the other cases decreeing the operation of blending, the donee testator expressly directed the payment of pecuniary legacies, inter alia, from the appointive estates. It does not necessarily follow, however, that because of the absence of such language here exceptant legatees should not so take. Rather is it, that because of the presumptions already referred to operating in exceptants' favor, the will here, particularly the residuary clause, should be most strictly construed in their favor. The burden of proof in such scrutiny must rest upon the residuary legatees and others to establish clearly that testatrix intended exceptants should be excluded from participating in the appointive estates.

Analysis discloses that the manner in which the power is exercised is perfunctory and careless; it is ambiguous in that it leaves considerable doubt as to whether the entire appointive estate or only a portion of it—the residue —is given to the residuary legatees. The applicable language of the residuary clause is as follows:

"All the rest, residue and remainder of my estate . . . or over which I have power of disposition by will, hereby expressly exercising any such power in me vested."

Certainly it is conceivable and debatable that the words "rest, residue and remainder" relate in the same sense

to the appointive estate as they do to the individual estate, namely, to the "rest, residue and remainder" thereof. Therefore, in ascertaining such part of the appointive estate, we must hold that it presupposes a deduction theretofore, of something. The pecuniary legacies constitute such deduction.

The majority decision holds that the burden of proof has been met, that testatrix intended that her pecuniary legatees should not participate in the appointed estates. With this I cannot agree.

The learned auditing judge has implemented his findings as to testatrix's intent, upon the language used by her in certain revoked codicils, dated 1928 and 1931, to an earlier will, as well as in the probated codicil dated May 7, 1936. If the language in the first two of these instruments were clear in character and expression, some weight might be accorded the argument. On the contrary, they only further evidence the loose and careless draftsmanship which characterizes the residuary clause of the will, as hereinbefore pointed out. Here the donee again, in her residuary clause, refers to three separate and distinct interests—her own estate, expectancies or remainders, and the appointive estates—in confused and ambiguous manner. The references do not in the least demonstrate that testatrix did not intend that exceptants should participate in the appointive estates.

In his handling of the probated codicil of 1936, the learned auditing judge has unfortunately regarded only one to the exclusion of two references in the same instrument to the same subject. He cites the last mentioned of the three: "Ask the Trust to pay any debts that I may have left unpaid, and to give 500 frcs. to the St. John's Church, Territet." The other two precede this clause and both refer to disposal of testatrix's remains, etc.—testamentary duties. The first refers to "Fidelity-Philadelphia Trust Company", the second to "Fidelity-Philadelphia Trust." In finding that the reference to "Trust" necessarily related to the trust estate or fund, under

which she received the income with testamentary power of appointment, and of one of which funds the Fidelity-Philadelphia Trust Company was trustee, the learned auditing judge erred. Such reference could equally be applied to the Fidelity-Philadelphia Trust Company as executor of her will.

The exceptions accordingly should be sustained.

KLEIN, J., joins in this dissenting opinion.