## McKinney Estate

*James E. Jack* and *John S. Kookogey,* for appellants.

*Stuart A. Culbertson* and *Paul E. Allen,* for Commonwealth.

MOOK, P. J., September 5, 1961.—This is an appeal by the executors of the estate of Mary Pearl McKinney, late of the City of Titusville, Crawford County, from the appraisement and assessment of the Pennsylvania estate tax assessed by the Commonwealth

against the estate of said decedent. The only question involved, however, is whether Pennsylvania must allow credit under the Pennsylvania Estate Tax Act of May 7, 1927, P. L. 859, as amended, for transfer taxes imposed by and paid to the State of Florida on Florida real estate owned by decedent. There is no dispute as to the facts; only a question of law is involved.

The facts as stated in petitioner's brief are as follows:

Mary Pearl McKinney, a resident of the City of Titusville, Crawford County, died testate on November 19, 1957. Her last will and testament, dated November 11, 1957, was probated and registered in the Register of Wills Office of Crawford County on November 25, 1957, in will book 32, page 56, and letters testamentary were granted thereon to petitioners, the executors named in her will. Under her said last will and testament, testator directed her executors, petitioners herein, to pay all estate, succession, legacy and inheritance taxes on her estate and charge the same against her residuary estate. In the normal course of settlement, Pennsylvania inheritance taxes under the Inheritance Tax Act of 1919, as amended, were determined and paid.

At the time of her death, in addition to her Pennsylvania estate, decedent was seized of a residence property situate in Winter Park, Orange County, Fla., and tangible personal property in and about the same, which she devised and bequeathed under paragraph 3 of her will. This property was appraised finally for Federal estate tax purposes for the sum of $102,500, and decedent's Pennsylvania estate was increased by this amount in arriving at the final value of her estate for Federal estate tax purposes.

On estates of nonresident decedents, the State of Florida imposes a tax upon the transfer of real property situate in that State and upon tangible personal

property having an actual situs in that State, "the amount of which shall be a sum equal to such proportion of the amount of the credit allowable under the applicable federal revenue act for estate, inheritance, legacy and succession taxes actually paid to the several states, as the value of the property taxable in this state (Florida) bears to the value of the entire gross estate wherever situate."

The amount of this tax was finally determined to be the sum of $7,277.92, which was duly paid to the State of Florida by the executors of the estate of said decedent, and receipt no. 12342 E. T. for payment in full, was issued by the Commissioner of Revenue of the State of Florida under date of August 2, 1960, as a "receipt for Inheritance and Estate Tax."

Following the filing by petitioners of a copy of the Federal final letter received pursuant to audit of Federal estate tax return, Theodore V. Power, inheritance tax appraiser for Crawford County, filed on August 9, 1960, an estate tax appraisement in the Register of Wills Office of Crawford County, under the provisions of the Act of May 7, 1927, P. L. 859, as amended, summarized as follows:

| | | |
|---|---|---|
| Credit (allowed by Federal government) for estate, inheritance, legacy or succession taxes paid to State | | $352,868.70 |
| Tax paid the Commonwealth of Pennsylvania | $330,709.02 | |
| Tax paid other States (if any) Florida | 7,277.92 | |
| Total of above items | | 337,986.94 |
| Differences between credit and tax paid to Pennsylvania and other States | | 14,881.76 |
| Estate tax due Pennsylvania | | 14,881.76 |

The above balance due Pennsylvania of $14,881.76 has been paid and receipt of the register of wills taken therefor.

Pursuant to instructions contained in a letter of September 20, 1960, of Edwin S. Schwenk, Sr., Chief Inheritance Tax Officer, Bureau of County Collection, Harrisburg, Pennsylvania, addressed to Forest L. Knapp, Register of Wills of Crawford County, the above appraisement of August 9, 1960, was cancelled, and a new estate tax appraisement was filed by Mr. Power under date of September 27, 1960, in which he failed to give any credit for tax paid to Florida, which said appraisement is summarized as follows:

Credit (allowed by Federal government) for estate, inheritance, legacy or succession taxes paid to States                  $352,868.70

Tax paid the Commonwealth of Pennsylvania           $330,709.02
Tax paid other States (if any)      0

Total of above items                    330,709.02

Difference between credit and tax paid to Pennsylvania and other states     22,159.68
Estate tax due Pennsylvania          22,159.68

The said final appraisement of September 27, 1960, last above mentioned, does not allow a credit for the $7,277.92 tax paid to the State of Florida, and for this alleged deficiency, Forest L. Knapp, Register of Wills, assessed and billed the estate of said decedent under date of October 1, 1960. Therefore, this appeal was taken.

The United States Revenue Act of 1926 provides, by section 301(b), 44 Stat. 70:

"The tax imposed by this section [the federal estate tax] shall be credited with the amount of any estate,

inheritance, legacy, or succession taxes actually paid to any State or Territory or the District of Columbia, in respect of any property included in the gross estate. The credit allowed . . . shall not exceed 80 per centum of the tax imposed . . . and shall include only such taxes as were actually paid and credit therefor claimed within three years after the filing of the . . . [federal estate tax return]. . . ." (Similar provision now 26 I. R. C. §2011.)

In referring to the foregoing Federal Revenue Act, the Supreme Court of Pennsylvania, in Knowles' Estate, 295 Pa. 571, 576, said:

". . . By this statute, the federal government has declared it to be the national policy that the net value of all estates (in excess of $100,000, that amount being exempt: Section 303(a)4, 44 Stat. 72, U. S. C. A. Tit. 26, section 1095) shall, before distribution to the persons entitled thereto, be reduced by certain percentages, progressively levied as succession taxes, but it is willing that the several states shall indirectly profit by this system; to that end, the federal statute in effect provides that, in all instances where a state imposes inheritance taxes, the federal government will allow, to those paying such local inheritance taxes, the amount thereof up to a sum equal to 80% of its own inheritance taxes, retaining the right to collect only so much of the federal tax as may exceed the sum thus relinquished. This is a method of distributing to the several states moneys collectible by the national government from their taxables, and the provision in question is not intended to either burden or benefit the taxpayer. Whenever a state does not see fit to take advantage of the situation thus created, the national government will collect the entire 100% of its assessed federal inheritance taxes.

"When this Federal Revenue Act,—with its extraordinary provision, which gives the states an op-

portunity to increase their own revenues, without cost to those who pay them taxes, by passing legislation pursuant to it,—became effective, the legislature of Pennsylvania, to avail the Commonwealth of the provision in question, supplemented the Inheritance Tax Act of June 20, 1919, P. L. 521, by the Act of May 7, 1927, P. L. 859. [72 PS §2303.]"

Thus, the above provision gave the States an opportunity to increase their own revenues without cost to those who pay them taxes. Pennsylvania took advantage of this opportunity by passing the Act of May 7, 1927, P. L. 859, which supplemented the Inheritance Tax Act of June 20, 1919, P. L. 521. The net result of this legislative act meant that the Commonwealth of Pennsylvania gained the slack or excess in the amount of the Federal credit allowable, while neither the estate of decedent nor the beneficiaries designated by him would be put to any extra burden, cost or expense whatsoever. These Federal and State provisions are intended to neither burden nor benefit the taxpayer, but constitute purely a method of distributing to the several States moneys collectible by the national government.

The 1927 Pennsylvania statute provided that an additional transfer tax would be imposed when the Federal credit exceeds the total tax paid to Pennsylvania, and any other States, at the rates fixed under the inheritance tax laws, the additional tax to equal said excess in amount.

About 15 years after the passage of the 1927 supplement, it became evident that Pennsylvania was not in a position to take full advantage of the said Federal credit under some circumstances. In a case where decedent's estate was insolvent, and, therefore, not taxable under the Inheritance Tax Law of 1919, but where said decedent by exercising a power of appointment created an estate upon which a Federal estate

tax was assessed, the Pennsylvania Supreme Court held that since there was no transfer of property from decedent's estate, there was no property upon which any State transfer tax could be imposed; and that then, even though the estate was subject to Federal estate taxes, Pennsylvania could not take advantage of the Federal credit allowable, because the Act of 1927 specifically limited the imposition of such an additional tax to the kind of property taxable under the Transfer Inheritance Tax Act of 1919, as amended: Commonwealth v. Davis' Estate, 345 Pa. 284. It was further held in said case that the Act of 1927 did not create a new class of taxable property nor enlarge the scope of the subject matter of taxable estates.

In 1943, the legislature amended the 1927 Act to enlarge the scope of said act. The 1943 amendment (Act of June 4, 1943, P. L. 864, 72 PS §2303) redefined the class of estate subject to the Pennsylvania estate tax by imposing said tax upon the estate of every person, who, at the time of his death, is a resident of the Commonwealth, provided such estate is in the class of estates which is subject to a Federal estate tax. "Such estate tax shall be in addition to any tax imposed as a result of the death of such resident under the provisions of the transfer inheritance tax law of this Commonwealth," and shall be computed as follows: the total inheritance tax due under the Act of 1919 shall first be ascertained. Then, in the words of the statute, "To such amount, there shall be added the amount of any estate, inheritance, legacy or succession taxes actually paid to any other State . . . in respect to any property owned by such decedent, subject to such taxes as a part of or in connection with his estate." The aforesaid sum shall be deducted from the amount of the Federal credit allowable for estate, inheritance, legacy or succession taxes paid to any

State and the remainder shall be the Pennsylvania estate tax.

The language cited above would seem to make quite clear that Pennsylvania in its endeavor to enlarge the scope of the Act of 1927, to cover all estates subject to Federal estate tax, has also plainly spelled out that the amount of Pennsylvania estate tax due shall be reduced by all death taxes paid to other States. It should be noted that whereas the 1927 Act referred to credit given for taxes paid by other States under the inheritance tax laws, the 1943 amendment includes credit for estate, legacy and succession taxes, as well, thus lending credence to a legislative intent to allow a deduction for any kind of death taxes paid to other states. While the 1943 and 1947 Acts increase the scope of the estate subject to Pennsylvania estate tax, the said acts do not in any way attempt to curtail credit for taxes paid to other States, but, in fact, enlarge the scope of such credit by providing that credit shall be allowed for estate, inheritance, legacy and succession taxes actually paid to other States.

In the instant case, the State of Florida, though not imposing an inheritance tax, in name as such, saw fit to take advantage of the Federal credit allowable by enacting a tax imposed upon the transfer of real and tangible personal property ". . . situate in said state, of every person who at the time of death was not a resident of Florida . . ." the amount of which should be a sum equal to such proportion of the amount of the credit allowable under the applicable Federal revenue act for estate, inheritance, legacy and succession taxes actually paid to the several States, as the value of the Florida property bears to the value of the entire gross estate wherever situate: Chapter 198, Florida Statutes, Estate Tax Law, sec. 198.03, 10 F. S. A. §198.03. Before title to the McKinney Florida real estate could be cleared, the said Florida

tax, known as an estate tax, had first to be paid in full. It should be noted that in this case the value of the Florida property increased the total value of the estate by $102,500, thereby increasing the Federal credit allowable.

However, the Commonwealth contends that the Florida so-called estate tax is merely a pick-up, since it was only passed to levy a tax on decedents' estates for the purpose of picking up what it can as credit against the Federal estate tax. The deputy attorney general in his brief, therefore, contends that it is not really an inheritance tax or transfer tax of any kind, and therefore it has never been recognized by Pennsylvania. He further points out that it is not a reciprocal proposition and that Pennsylvania does not impose an estate tax on nonresident decedents. However, in our judgment the matter of reciprocity is not the issue, but rather the case must turn on the language of our statute which presently applies in determining the credits allowable which shall include ". . . the amount of any estate, inheritance, legacy or succession taxes actually paid to any other State . . ." The language of this section is plain. It conveys a clear and definite meaning. Being plain and unambiguous, there is no occasion for resorting to rules of statutory construction: Rich v. Meadville Park Theatre Corp., 360 Pa. 338, 340.

Furthermore as said in Dixon's Case, 138 Pa. Superior Ct. 385, 389:

"Statutes imposing taxes receive, at the hands of the courts, a strict construction. The words used should be clear and unambiguous, their meaning not extended by implication. If a doubt arises, the construction should be against the government: Com. v. P. R. T. Co., 287 Pa. 190, 196, 134 A. 455; Leopold Tax Assessment Case, 118 Pa. Superior Ct. 158, 179 A. 904."

We are, therefore, satisfied that the 1943 amend-

ment, as further amended by the Act of 1947, P. L. 1091, sec. 1, to the Act of 1927, supra, plainly requires that this Commonwealth credit the executors with the amount of estate taxes paid to the state of Florida in computing the estate tax due under this statute.

In this respect it is interesting, and we think it is important, to note that the new Inheritance and Estate Tax Act of June 15, 1961, P. L. 373, changes this rule. This act, which becomes effective January 1, 1962, provides as follows in section 421:

"*When Federal Credit Not Exhausted.*—In the event that a Federal estate tax is payable to the United States on the estate of a decedent who was a resident of the Commonwealth at the time of his death, and the inheritance tax, if any, paid to the Commonwealth (disregarding interest or the amount of any discount allowed under section 716 of this act), plus the death taxes (not including any death tax expressly imposed to receive the benefit of the credit for state death taxes allowed by the Federal estate tax law) paid to other states or territories in respect to the property of the decedent, is less than the maximum credit for state taxes allowed by the Federal estate tax law, a tax equal to such difference is hereby imposed."

The words "not including any death tax expressly imposed to receive the benefit of the credit for state death taxes allowed by the Federal estate tax law" were not included in the former statute and hence expressly modify the existing law. See "The Pennsylvania Inheritance and Estate Tax Act of 1961," by Edward N. Polisher and Carl A. Polsky, District and County Advance Sheets for July 10, 1961, vol. 24, no. 2. With reference to section 421, the authors state:

"An important addition to this act that materially changes existing law is an exception to the determination of states' and territories' death taxes. If a state imposes a death tax based solely on the Federal credit,

such tax is not included to determine if there was any difference in taxes paid for the purposes of the estate tax."

Thus, under the provision of the new act, it is expressly provided that no credit shall be given for taxes paid to a state like Florida which imposes a death tax based solely on the Federal credit.

It is an elemental rule of statutory construction that a change of language in a statute indicates a change of legislative intent: Ogilvie's Estate, 291 Pa. 326, 333; Commonwealth v. Lowe Coal Co., 296 Pa. 359, 365; Dixon's Case, 138 Pa. Superior Ct. 385, 391; Vince v. Allegheny Pgh. Coal Co., 153 Pa. Superior Ct. 333, 337. Thus, it has been held that, where words of a later statute differ from those of a previous one on the same subject, they presumably are intended to have a different construction: Fidelity Trust Co. v. Kirk, 344 Pa. 455; Commonwealth v. Moon, 383 Pa. 18. Therefore, it seems clear that, since the new Inheritance and Estate Tax Act of 1961 changes the existing law to provide that no credit shall be given for death taxes similar to those imposed by the State of Florida in this case, a different construction was intended than exists under the present law.

Our conclusion, therefore, is that under the existing law the Commonwealth must give the estate credit for the estate taxes paid to the State of Florida.