The judgment of the trial court is reversed and the cause is remanded.

**WALTER et al. v. GOETH et al.**

No. 11364.

Court of Civil Appeals of Texas. San Antonio.

Jan. 19, 1944.

Rehearing Denied Feb. 16, 1944.

John D. Hartman, of San Antonio, and William I. Potter, of Kansas City, for appellants.

Dodson, Ezell & Duke, Werner N. Beckmann, and Goeth, Webb & Goeth, all of San Antonio, for appellees.

NORVELL, Justice.

This is a will contest. Chas. E. Walter and Katie Hallauer (joined by her husband, Joe Hallauer), a nephew and niece of the testatrix, Sarah J. Guessaz, are appellants here and were contestants below. Appellees are C. A. Goeth, independent executor under the will of Sarah J. Guessaz, deceased, Louis Guessaz, Lillian Guessaz Birkhead and her husband, General Claude V. Birkhead. These parties were contestees below.

Louis Guessaz and Lillian Birkhead are brother and sister. General Oscar C. Guessaz was their half brother and husband of testatrix. General and Mrs. Guessaz had no children. Mrs. Guessaz, the testatrix, died on May 17, 1938, her husband having predeceased her by about thirteen years. In her will she named C. A. Goeth independent executor, bequeathed a legacy of $2,000 to Louis Guessaz, and designated Lillian Birkhead as the residuary legatee and devisee.

This will was admitted to probate by the County Court, and upon appeal to the District Court the issues raised by contestants were tried to a jury, which found against contestants upon the issue of the testamentary capacity of the testatrix (Special Issue No. 1), but did find that the will which was executed on February 21, 1938, was procured by means of undue influence exercised on testatrix by Claude V. Birkhead (Special Issue No. 2) and Lillian Birkhead (Special Issue No. 3).

Appellees moved for judgment in accordance with Rule 301, Texas R.C.P., contending that the jury's answers to Special Issues Nos. 2 and 3 should be disregarded, as such findings had no support in the evidence.

This motion was granted by the trial court and judgment rendered confirming and approving the action of the County Court in admitting the will to probate.

Appellants attack the trial court's holding that there was no evidence supporting the jury's finding upon the issues of undue influence.

■ Preliminary to a discussion of this contention, we will state that in our opinion the will here involved contains severable provisions. As the jury found against appellants upon the issue of testamentary capacity, it follows that the provisions of the will appointing the independent executor and bequeathing a legacy of $2,000 to Louis Guessaz must be recognized as valid. There is no warrant in the record for an assertion that the alleged undue influence of General and Mrs. Birkhead affected any part of the will other than the residuary clause. Walker v. Irby, Tex.Com.App., 238 S.W. 884; In re Carother's Estate, 300 Pa. 185, 150 A. 585, 69 A.L.R. 1127; annotation 69 A.L.R. 1129.

The will here involved was the last of a series of four wills, all prepared by Judge C. A. Goeth, the personal attorney for Mrs. Guessaz as well as General Guessaz up to the time of his death. The first of these wills was executed in 1928. Under its terms Lillian Birkhead was named as devisee of certain real property situated in Bexar County, Texas. After the sale of this property Mrs. Guessaz executed another will (in 1932) wherein Lillian Birkhead was named as the legatee and devisee of three fourths of residue and remainder of the estate after the payment of certain legacies provided for therein. Legacies of $2,000 each were bequeathed to Louis Guessaz and a niece, Lillian Schwarzenholzer. In 1935 Mrs. Guessaz made a third will. Mrs. Birkhead was designated as sole residuary legatee, and legacies of $2,000 each were provided for Louis Guessaz and Lillian Schwarzenholzer. The 1938 will, the one admitted to probate by the County Court and here involved, provided for a legacy of $2,000 to Louis Guessaz and designated Lillian Birkhead as residuary legatee. No mention was made of Lillian Schwarzenholzer. In all four wills C. A. Goeth was named as independent executor of the estate.

Mrs. Guessaz was seventy-two years of age at the time of the execution of this last will, on February 21, 1938. The attesting witnesses to the will were J. E. Webb and Fred Goeth, law partners of C. A. Goeth, who drew the will. Mrs. Guessaz read over the will and then signed it in the presence of the attesting witnesses. No other persons were present at the time of the execution of the will. Fred Goeth then took the will and delivered it to his father, C. A. Goeth, who produced it for probate after the death of Mrs. Guessaz.

It appears that Lillian Birkhead made her home with her half brother (General Guessaz) and his wife (the testatrix) for about four years prior to her marriage to Claude V. Birkhead, in 1906. A close personal relationship was shown to have existed between the Birkheads and Mrs. Guessaz from the time of Mrs. Birkhead's marriage until the death of Mrs. Guessaz. In November of 1937 Mrs. Guessaz moved into the Birkhead home and remained there until three days before her death when she was moved to a hospital. It also appears that Mrs. Guessaz received a substantial part of the property she possessed at her death from her husband, General Guessaz, who conveyed all of his property to her prior to his death in 1925.

The series of wills above mentioned demonstrates a fixed and long continuing intention on the part of Mrs. Guessaz to dispose of her property by means of a will and to leave a substantial portion thereof to Lillian Birkhead, her deceased husband's half sister. In view of the relationship between the parties, we do not believe it can be said that the disposition of the property effected by the 1938 will was unnatural.

It does appear that there was an intimate personal relationship maintained between the testatrix and her niece, Lillian Schwarzenholzer, until some time during the year 1936. Mrs. Schwarzenholzer for a time lived with Mrs. Guessaz, as a companion, cooking meals and keeping house for the elderly lady. About May, 1936, however, this relationship terminated. Another niece, Mayme Thompson, also lived for some time with Mrs. Guessaz. She stayed with her aunt from May, 1937, until the time the testatrix moved to the Birkhead residence, in November of that year.

Practically all of the evidence upon which appellants rely to support the jury's findings comes from the witnesses Schwarzenholzer and Thompson. Their testimony, for the most part, consists of statements of declarations of testamentary intentions made to witnesses by testatrix; i. e., that she intended to remember them in her will. These witnesses also detailed instances of somewhat peculiar behavior and actions of testatrix upon certain occasions.

This testimony had more direct bearing upon the issue of testamentary capacity (resolved adversely to appellants by the jury) than it did to the issues of undue influence. The nieces likewise testified to various instances where the Birkheads had advised Mrs. Guessaz in connection with business affairs and handled her business for her. The sum total of this testimony, as well as all other evidence relied upon by appellants is accurately stated in appellees' brief as showing "only (1) that deceased had at dates long antecedent to the date of the Will made testamentary declarations to favor the two witnesses Schwarzenholzer and Thompson; (2) that opportunity existed for Appellees Birkhead to influence the testatrix; and (3) that Appellee Claude V. Birkhead actually exerted some degree of influence on testatrix in some of her business affairs, which, however, were wholly unconnected with the will."

█ Under the authorities, as a matter of law, there is "no evidence" supporting the jury's findings of undue influence. Maul v. Williams, Tex.Civ.App., 88 S.W.2d 1087; Shofner v. Shofner, Tex.Civ.App., 105 S.W.2d 418, writ refused; Salinas v. Garcia, Tex.Civ.App., 135 S.W. 588, writ refused; Patterson v. Lamb, 21 Tex.Civ.App., 512, 52 S.W. 98, writ refused; Pierson v. Pierson, Tex.Civ.App., 57 S.W.2d 633, writ refused; Taylor v. Small, Tex.Civ.App., 71 S.W.2d 895; Decker v. Koenig, Tex.Civ.App., 37 S.W.2d 378.

Appellants rely upon Craycroft v. Crawford, Tex.Com.App., 285 S.W. 275, in which a holographic will was involved. This will, upon the death of the testator, was produced by the chief beneficiary under the will. The record was entirely silent as to the circumstances surrounding the actual making of the will. There were numerous circumstances from which it could be inferred that the testator died without knowing that he had made the will involved. As above pointed out, the record here discloses an entirely different situation with reference to the actual execution of the will involved.

For the purposes of this case, we have considered the testimony of Lillian Schwarzenholzer and Mayme Thompson as if it had been properly admitted in evidence by the trial court over appellees' objection based upon the dead man's statute, Article 3716, Vernon's Ann.Civ.Stats. These witnesses were not parties of record in this suit. It appears that both of them instituted actions against the executor based upon claims for personal services rendered to testatrix during her life time. These actions were settled by the payment of certain sums of money to the claimants, and upon the trial of this case these witnesses testified that they had no further claims in and to the estate of the decedent. The correctness of the trial court's ruling in admitting their testimony is doubtful, in view of the Supreme Court's action in granting a writ of error in the case of Ragsdale v. Ragsdale, Tex.Civ.App., 172 S.W.2d 381, upon the point that the Court of Civil Appeals erred in holding that a witness in a similar situation to that of the witnesses here involved was not disqualified under the statute to testify as to transactions with a decedent. If the testimony of Schwarzenholzer and Thompson relating to transactions with the decedent be wholly disregarded, there remains little of substance to the contention that the jury's answers to Special Issues Nos. 1 and 2 are supported by evidence. Having, however, come to the conclusion that if the testimony of the witnesses be given its full effect, the evidence is still insufficient as a matter of law to support the jury's answers to Special Issues Nos. 2 and 3, we pretermit a decision of the question of the admissibility of this testimony in evidence.

The judgment of the trial court is affirmed.